PIERCE OIL CORPORATION V. F. C. WEINERT, SECRETARY OF STATE.

Motion No. 3182. Decided June 10, 1914.

**1.—Foreign Corporation—Right to Do Business.**

·The transaction by a foreign corporation, within the State, of other than interstate business, is only a privilege, which the State may extend or withhold; it is not a right which the corporation possesses. The State is free, therefore,. to prescribe the terms or conditions upon which it grants the authority. The foreign corporation, in seeking only a license which the State is under .no obligation to allow, is in no position to complain of their severity. Taber v. Interstate B. & L. Assn., 91 Texas, 92. (P. 437.)

**2.—Same—Forfeiture of Permit—Purchaser of Property and Business— Statute.** ·

Where the right of a foreign corporation to do business in the State has been forfeited on its conviction of violating the laws of the State against trusts and unlawful combinations (Rev. Stats., 1911, art. 7803), no other corporation which has purchased its property and business or assumed the payment of its obligations can be permitted to incorporate to do business in the State (Rev. Stats., 1911, art. 7805), though making the affidavit required by law as to its freedom from any trust or unlawful combination. And this, irrespective of whether it is or is not a mere corporate continuation of the company so forfeiting the right. (Pp. 436-439.)

**3.—Same—Time of Incorporation.**

The prohibition by the statute (Rev. Stats., 1911, art. 7805) of granting permit to do business in the State to a purchaser to whom a corporation which has forfeited that right "may have transferred its property and business" is not limited to companies acquiring same prior to the judgment of forfeiture. It applies to all cases of such acquisition prior to the purchaser's application for right to do business. (P. 438.)

**4.—Same—Attainder of Property.**

·The statute (Rev. Stats., 1911, art. 7805) can not be considered as working an attainder of property of the corporation forfeiting its right to do business in the State. It is left free to sell both property and business; only the purchaser's privilege of acquiring a right to do business in the State is affected; and only the purchaser acquiring both property and business, not the purchaser of property alone. (P. 439.)

**5.—Same—Extra-Territorial Operation.**

The statute denying to a foreign corporation a permit to do business in the State because of acts done by it beyond the State limits is not invalid as giving its effect extra-territorial operation. The right to exclude is absolute,

and the Legislature may impose any condition it prescribes, whether based on acts within or outside the State.   (P. 439.)

Motion in the Supreme Court, by the Pierce Oil Corporation, for leave to file a petition for mandamus against Weinert, Secretary of State, requiring the issuance by him to relator of a permit to do business in Texas.

*H. S. Priest, E. B. Perkins,* and *N. A. Stedman,* for relator.

*B. F. Looney,* Attorney General, and *C. M. Cureton,* Assistant, for respondent.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

The relator, Pierce Oil Corporation, is a Virginia corporation, chartered on June 21, 1913.   It has heretofore made application in due form to the Secretary of State for a permit to do business in the State, tendering in that connection the anti-trust affidavit required by law, and all lawful fees.   Upon his refusal to issue the permit, it has filed this motion for leave to file its petition for a mandamus to compel its issuance.

On June 1, 1907, in a suit by the State in the District Court of Travis County, the Waters-Pierce Oil Company, a foreign corporation chartered in Missouri, was by final judgment convicted of violation of the anti-trust laws of this State, for which a large fine was imposed, its permit to do business canceled, and an injunction issued perpetually enjoining it from transacting any but interstate business within the State.   The relator was incorporated with the purpose of acquiring the property and business of the Waters-Pierce Oil Company, then conducting its business in Missouri, in other States and in the Republic of Mexico; and shortly after its incorporation it purchased and took over from the Waters-Pierce Oil Company all of its property and business and assumed all of its obligations, which business *it* now owns and operates.

We do not find it necessary to determine whether the relator is but a corporate continuation of the Waters-Pierce Oil Company, and therefore subject to the injunction decreed against that company in the suit above referred to, one of the positions here advanced by the respondent as a ground for his refusal to issue the permit.   The question is, in our opinion, plainly ruled by the statute, article 7805, Revised Statutes, 1911, which is as follows:

"When any foreign corporation has been convicted of a violation of any of the provisions of this chapter, and its right to do business in this State has been forfeited, as provided in article 7803, no other corporation to which the defaulting corporation may have transferred its properties and business, or which has assumed the payment of its obligations, shall be permitted to incorporate or do business in Texas."

The Waters-Pierce Oil Company having been convicted of violation of the anti-trust law of the State embodied in the chapter of which article

7805 is a part, and its right to do business in the State having been forfeited, the relator, a foreign corporation to which it has transferred all of its properties and business and which assumed the payment of all of its obligations then existing, comes directly within the statute and is prohibited from doing business in Texas, unless, by construction, the statute is given an effect contrary to the meaning of its literal terms.

Several contentions are made by the relator in respect to the proper construction of this statute, all of which we have examined but none of which we regard as sound. Among others it urged, principally: (1) That the whole policy and purpose of the anti-trust legislation of the State is only to prevent illegal combination in restraint of trade, and it was not the intention of this statute to exclude from the State an independent foreign corporation not a member of any such combination, which will afford competition in its line, and is able to truthfully make the anti-trust affidavit required of foreign corporations under article 1315, and has done so, merely because it has acquired the properties and business or has assumed the obligations of another foreign corporation once convicted under such laws and its permit forfeited, but which, at the time of the sale of its property and business, was free from any illegal alliance. (2) That under the proposition just stated the statute should be limited in its application to such corporations as constitute but a reorganization or continuance of the convicted corporation. And (3) that, regardless of any other view, the statute should be held to apply to only such transfers of the properties and business of the defaulting corporation as were made prior to its conviction. In connection with these general propositions it is also urged that to hold the relator barred from the State because of its purchase, out of the State, of the properties of the Waters-Pierce Oil Company not situated within it, is, in effect, to attaint such property, and is likewise to give the statute an extra-territorial operation.

The transaction by a foreign corporation within the State of other than interstate business, is only a privilege, which the State may extend or withhold; it is not a right which the corporation possesses. The State is free, therefore, to prescribe the terms or conditions upon which it grants the authority. They may be rigorous, but the power of the Legislature to give them that character is undoubted; and the foreign corporation in seeking only a license which the State is under no obligation to allow, is in no position to complain of their severity. Its only alternative is to come within the conditions which the State has seen fit to impose. Taber v. Interstate B. & L. Assn., 91 Texas, 92.

The manifest aim of this statute was to prevent the fictitious succession in this State of a foreign corporation which had been adjudged an offender against the anti-trust law, and whose permit to transact its business had been forfeited. The Legislature had the right to select and provide any test which it deemed a proper one for determining that question, or to exclude from the State any corporation sustaining a given relationship to the convicted corporation. It might have enacted the statute in such terms as would deny the privilege of coming within its

·borders for the transaction of their business, to only such corporations purchasing the property and business of a defaulting corporation, as were but its continuation, or to only such as had made the purchase prior to its conviction. But no such qualification can be imposed by construction upon this statute in the face of its plain provisions. The statute very clearly evinces a purpose on the part of the Legislature to reject any inquiry by the officials of the State as to whether the corporation seek· ing the permit has any identity with the convicted corporation, and to provide, as the test of its right, simply whether it has acquired the prop-erties and business, or has assumed the obligations of a foreign corpora-tion previously convicted under the anti-trust law and whose permit has been forfeited. The statute permits no inquiry beyond this. And no exemption from its operation can be predicated upon a condition which discloses the acquisition of the properties and business of such a defaulting corporation, or the assumption of its obligations, by the cor-poration seeking the permit, regardless of whatever else may be shown in respect to its relationship. Language could not be plainer, and there is no room for a different construction. With the policy or wisdom of the statute this court has nothing to do. It is our duty to give effect to its provisions.

It is furthermore evident that the Legislature intended to make imma-terial when the acquisition of the defaulting corporation's properties and business took place, whether before or after its conviction, since the statute is silent upon that question. It merely provides that no foreign corporation shall be permitted to incorporate or transact business in Texas, to which the defaulting corporation "may have transferred its properties and business, or which has assumed the payment of its obli-gations," which can only mean a corporation that has made such acquisi-tion or undertaken such assumption at any time prior to its effort to so incorporate or transact business within the State. Necessarily, the only concern of the statute in this respect is whether the corporation is under the disability it imposes, at the time it seeks to incorporate in Texas or transact its business in the State, no matter when it was incurred. That is the point of time, and the only point of time, to which it has refer-ence in relation to the transfer of the defaulting corporation's properties and business and the assumption of its obligations. The corporation comes under the disqualification of the statute, whenever such transfer is made or such obligations are assumed.

That similar language is employed in article 7802, relating to the acquisition of the properties and business of a defaulting domestic cor-poration, which, it is said, can not transfer its property after its charter is forfeited as the result of such conviction, does not affect the question. That a corporation taking over the properties and business of a con-victed domestic corporation, could only come, for that reason, under the disability of that article by a purchase made before the latter's convic-tion, is of no force in determining the effect of this statute. It is per-fectly plain that it is the transfer of the defaulting corporation's prop-

erties and business which creates the disqualification under both articles; the time of the transfer is immaterial.

There is no question of the attainder of property involved. The statute makes no such attempt. Nor does it seek to prevent any sale by the convicted corporation of its property. A foreign corporation which buys merely the convicted corporation's property is not excluded by the statute. It must acquire "its business," as well, to be subject to its operation. The defaulting corporation, so far as affected by this statute, is left free to sell both. It is merely provided that a foreign corporation acquiring both can not be permitted to incorporate or transact business in Texas.

The statute exerts no extra-territorial power. It does not prohibit anything done without the State, but only that which is attempted within the State. That its prohibition may operate because of acts done without the State, does not impart to it an extra-territorial effect, or render it any the less a valid exercise of legislative authority over a subject within the jurisdiction of the State. As the State has the right to entirely withhold its permission for a foreign corporation to transact business within its limits, it is within its power to provide that such permission shall be denied for such cause as it may prescribe, whether based upon acts within the State or out of it. Hammond Packing Company v. Arkansas, 212 U. S., 322.

The motion is refused.