Estell JONES, Appellant,

v.

William DAVIS, Appellee.

No. 3535.

Court of Civil Appeals of Texas.

Waco.

May 22, 1958.

Rehearing Denied June 26, 1958.

Otis Scruggs, Jr., Houston, for appellant.

William Davis, in pro. per.

TIREY, Justice.

This is a child custody case. Appellant sought to gain the care, custody and control of his minor daughter, Loria B. Jones, by writ of habeas corpus. At the conclusion of the testimony the court decreed that the father, Estell Jones, take nothing by his suit, and further decreed that the care, custody and control of Loria B. Jones be awarded to William Davis, her grandfather. Estell Jones seasonably excepted to the decree and gave notice of appeal and duly

perfected his appeal to the Court of Civil Appeals for the First Judicial District, and the cause is here on transfer order of our Supreme Court.

The judgment is assailed on one point. It is: "The trial court erred in refusing to grant the application for writ of habeas corpus of the appellant and in fixing custody of the minor child in the appellee."

Testimony was tendered to the effect that Loria B. Jones was born to appellant and his late wife, Alma Davis Jones, during their married life, and that Loria B. was approximately seven years old at the time this decree was entered; that appellant and his deceased wife were separated and living apart at the time of the wife's death, and that during this period of separation appellant's wife lived in the home of her father in Houston and worked a part of the time. Testimony was also tendered to the effect that when Alma Davis Jones separated from her husband she was some eight months in pregnancy, and shortly after she came to Houston her second child, a son Clifford, was born, but appellant denied that he was the father of this child. Appellant's wife and these two children were living in the home of her father at the time of the mother's death in August 1956.

It appears that appellant, shortly after his wife's death, took Loria B. to his mother's home in Leon County, where the child remained until about March 2, 1957, at which time the child was brought back to appellee's home for a visit with appellee and his family, and when appellee forbid the appellant to take the child back to his mother's home in Leon County, he filed this suit.

The testimony tendered shows that when appellant obtained the possession of his daughter he took her to the home of his mother, who lives on a 90 acre farm some 10 or 12 miles from Centerville in Leon County, and that while she was with appellant's mother the child was well cared for and sent to school; that his mother's farm was near a bus line, and that the child rode the bus to school and was sent to school regularly. During this time the father continued to live in Houston, where he had lived for the past few years, working at various jobs as a common laborer. His salary is not shown and the record shows that he did make some small contributions during his wife's lifetime to the support of the children, but these amounts were small.

Appellant's mother took the witness stand and testified to the effect that she was able and willing to care for the child, and that the child had received good treatment at her hands while she was with her in her home, and that she sent her to school, and that the child was well fed and clothed.

Appellee, William Davis, testified to the effect that he had lived in Houston for some time and that he had been in the employ of Hughes Tool Company for some fifteen years, and he lived in a two-story, eight-room home; that his wife was dead; that he had one grown daughter (age 20) who lives in the home with him and who goes to college and gets home each afternoon about 3:00 or 4:00 o'clock; that he had a brother who lived next door to him and that this brother was at home each afternoon and looked after Loria B. when she returned from school until his single daughter got home. There is an absence of testimony as to the age of appellee, William Davis, as well as the age of appellant's mother, but since appellant and appellee and appellant's mother were all in open court and testified, the trial court had an opportunity to see and hear each of the witnesses and was in a much better position than we are to decide what was for the best interests of this child.

Appellant relies upon the pronouncements of our Supreme Court in State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901 and also the case of Wauer v. Wauer, Tex.Civ.App., 299 S.W.2d 719 (no writ

history) and the cases cited in each. We have re-read very carefully the foregoing decisions and we are in complete accord with each of them, but we think that under the decisions of our Supreme Court dealing with child custody cases that the trial court had the duty of determining what was for the best interests of the minor child, Loria B. Jones, under all of the testimony submitted to him.

After all, this record is without dispute that the mother of this child sought refuge for herself and Loria B. and her unborn baby during her marital status with appellant, and that during this time appellant contributed very little to the support of his wife and this child and the unborn child. In view of the foregoing undisputed factual situation, it would have been unusual if the trial judge had found that appellant was a proper person to have the care, custody and control of Loria B., when he failed to provide for her and give his wife the support that she needed under the foregoing circumstances. After all, appellant did not seek to have the child in his home but he placed her in the home of his mother in Leon County, approximately some 100 miles away from him. On the other hand, the court chose to place the child in the care, custody and control of her grandfather, where she had received protection and shelter substantially the whole of her life, and where she would be associated with her younger brother, and where the grandfather and his grown daughter could look after them.

Our courts have consistently held that the prime consideration in the disposition of any child custody case is the welfare of the child and its custody should be awarded to the person in whose care its best interests would be subserved. The decision of our Supreme Court in Legate v. Legate, 87 Tex. 248, 28 S.W. 281, has never been changed. See also Schultz v.

Brown, Tex.Civ.App., 152 S.W.2d 801 (er. dis.); Templeton v. Walker, Tex.Civ.App., 179 S.W.2d 811 (writ ref.) and the authorities there cited.

In these child custody cases, which always give our courts so much concern because they are of great magnitude and possess possibilities of grave consequences, the law places the solemn responsibility upon a trained judiciary, not only to exercise general control over the minor, but to weigh the evidence and ultimately determine, under all of the facts and circumstances, what is best for the child. See Constitution of Texas, Art. 5, Sec. 8, Vernon's Ann.Civ.St.; Wright v. Wright, 50 Tex.Civ.App., 450, 110 S.W. 158 (no writ history); Northcutt v. Northcutt, Tex.Civ. App., 287 S.W. 515 (er. dis.); Lawler v. Lawler, Tex.Civ.App., 15 S.W.2d 684 (no writ history); Bateman v. Bateman, Tex. Civ.App., 188 S.W.2d 866 (writ dis.). See also Oldfield v. Campbell, Tex.Civ.App., 191 S.W.2d 897; Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 4 A.L.R.2d 1.

Since the trial court had the duty and responsibility to determine what was for the best interests of this little girl, we cannot say, under the record here made, that he abused it in awarding the care, custody and control to appellee. Needless for us to say, what is best for the interests of this child is a matter over which the District Court has jurisdiction to consider at any time, and appellant is not hereafter precluded from making such showing, if he can, that the best interests of the child would be best served by having the care, custody and control awarded to him.

The judgment of the trial court is affirmed.

HALE, J., took no part in the consideration and disposition of this case.